IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| ALBERT WATSON, } | |
| } | |
| Plaintiff, } | |
| } | CIVIL ACTION NO. |
| v. } | 02-AR-2284-S |
| } | |
| ENERGY DISPATCH, LLC, } | |
| } | |
| Defendant. } | |

**MEMORANDUM OPINION AND ORDER**

This court does not always rule upon a plaintiff's petition for attorneys' fees under a fee shifting statute when an appeal has been taken by a non-prevailing defendant, because under such procedural circumstances the fee request becomes moot if the appeal is successful and the fee will be increased if the appeal is unsuccessful. In the above-entitled case, defendant, Energy Dispatch, LLC ("Energy Dispatch") has timely appealed from a final judgment of $200,000, and has proffered a supersedeas bond in that amount. The court elects to rule on the fee petition while the main appeal is pending in order to give both sides the opportunity to appeal from the judgment fixing the fee.

Plaintiff, Albert Watson("Watson"), brought this action against Energy Dispatch, his former employer, pursuant to 42 U.S.C. § 2000(e), *et seq*. ("Title VII"), alleging retaliatory termination. After he became the prevailing party, he invoked 42 U.S.C. § 1988, and sought attorneys' fees of $86,326 and costs of $3,755, a total of $90,081. Watson's lead counsel spent 181.7 hours on the case

and claims that his reasonable hourly rate is $350. His less experienced associate spent 118 hours and claims a reasonable hourly rate of $185. Included in Watson's "attorney's fee" calculation is a claim for non-attorney hours of 10.6 hours at $85 per hour. This court does not award "attorneys' fees" to non-lawyers even if they are highly qualified paralegals, so that the ultimate fixing of a reasonable fee for Watson's attorneys will begin by subtracting $901 from the amount claimed.

Unsurprisingly, Energy Dispatch challenges the reasonableness of the suggested hourly rates for Watson's lawyers, and the reasonableness of, as well as the necessity for, the lawyer hours spent. Both sides seem to concede that the lodestar method of fixing the fee is the appropriate method for fixing the fee. Therefore, the court will not waste paper and time parsing all of the possible enhancing and reducing factors discussed in *Johnson v. Georgia Highway Express, Inc.*, 488 F. 2d 714 (5th Cir. 1974), and ameliorated in *Hensley v. Eckerhart*, 461 U.S. 424, 103 S. Ct. 1933 (1983). Although it may not be easy to decide upon the proper market rate for Watson's two lawyers, and the number of hours that they reasonably spent, a problem more worthy of the court's agonizing over is what effect to give the contingent fee contract that was executed by Watson in favor of his lawyers. That contract is easily distinguishable from the contract that was examined by the Supreme Court in *Venegas v. Mitchell*, 495 U.S. 82, 110 S. Ct.

2

1679 (1990), in which a civil rights plaintiff entered into a contingency-fee agreement providing for an attorney's fee of 40% of the gross recovery, but with an **offset** in the amount of any fee awarded against the defendant under the fee shifting statute there applicable.  What constitutes a reasonable attorney's fee as between a plaintiff and his attorney is not quite the same thing as the question of what constitutes a reasonable attorney's fee as between plaintiff and defendant under a fee shifting statute.  In *Venegas*, the Supreme Court was deciding whether a fee of $406,000 (40% of the recovery minus the offset) was a reasonable fee.  The court was not reviewing the reasonableness of the fee as viewed by the defendant.  That fee, as fixed by the trial court, was $117,000.  It was unquestionably reasonable.  The Supreme Court unanimously held that the fee contract was enforceable.  But, the Supreme Court ended its opinion with the following careful limitation on its holding:

> **We . . . . have no occasion to address the extent of the federal courts' authority to supervise contingent fees**.

110 S. Ct. 1684.  (emphasis supplied).

The formal fee contract executed by Watson provides (1) for a non-refundable retainer of $2,500, (2) for the client's responsibility to reimburse expenses in the event of a lack of success, and (3) for a fee of "forty percent of any and all recovery, plus a base retainer of $2,500, even if that means at the time of settlement my attorneys may receive — if all goes well — a

substantial fee". The contract makes no mention of the possibility of an attorney's fee to be awarded against the defendant, or what to do with such a fee, if awarded. In other words, the "offset" provision discussed in *Venegas* is not here present. If this fee contract is construed against the draftsman, it becomes analogous to the traditional undertaking by a lawyer to collect on behalf of his client, under a contingent fee arrangement of 30% of the amount recovered, the balance due on a promissory note that, within its terms, provides for a fee against the defaulting maker. Such a lawyer, if and when he collects a judgment that includes principal, interest and a reasonable attorney's fee, will remit 70% of the total collected to his client and will keep 30% as his fee. The reasonable fee as it was determined by the judge or jury does not control the lawyer's actual compensation in such a case. His contract with his client controls the fixing of his fee. This was the holding in *Venegas*.

*Blanchard v. Bergeron*, 489 U.S. 87, 109 S. Ct. 939 (1989), makes clear that the amount of a contingent fee, as computed under a fee contract, does not cap the amount to be awarded to a prevailing plaintiff against a defendant under 42 U.S.C. § 1988. This means, of course, that the $82,500 (40% of $200,000 plus the non-refundable retainer) that Watson, by virtue of his success, has guaranteed his lawyers, does not provide the measure for fixing the fee to be awarded against Energy Dispatch. But, when the court

fixes that fee and enters judgment in favor of Watson and against Energy Dispatch, does the fee suddenly become part of the **"any and all recovery"** that is referred to in the fee contract, and thereby trigger an application of the collection lawyer analogy?

The court is not being asked to decide a dispute between Watson and his attorneys, because no such dispute as yet appears, but the court is called upon to make sense of the overall situation, in order that Watson's attorneys will receive both their contractually guaranteed fee and a reasonable fee pursuant to 42 U.S.C. § 1988, but not unreasonable or unfair compensation. The potential overlap occasioned by the language or absence of language in this fee contract and a § 1988 fee raises a question that must be resolved. Watson's attorneys have not informed the court of their interpretation of their fee contract under these circumstances, and neither has Watson. If Watson's attorneys are claiming both $82,500 from Watson and $86,326 from Energy Dispatch, their fee arguably would be both unreasonable and unconscionable. If, however, Watson's attorneys intend to offset any fee awarded against Energy Dispatch against their 40% contingent fee, or to include any fee awarded against Energy Dispatch as part of the overall recovery, from which Watson will receive 60% and they will receive 40%, the problem may be solved.

If **by 1:30 p.m., July 7, 2005**, Watson's attorneys file with the court a declaration of their position with respect to the

treatment of the contingent fee contract under these circumstances, and certify that they have obtained Watson's written agreement to their position on the subject, the court will grant Watson's fee petition, will promptly fix a reasonable fee and will enter judgment thereon.

DONE this 1st day of July, 2005.

_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE